UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LESTER ROWE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 1:19-cv-05060-SEB-DML |
| J. SCISM, | ) ) ) |
| Defendant. | ) |

**Entry Granting Defendant's Unopposed Motion for Summary Judgment**

Plaintiff Lester Rowe filed this civil rights action alleging that while incarcerated at Correctional Industrial Facility, his Eighth Amendment right to constitutionally adequate medical care was violated. Dkt. 10. Specifically, Health Services Administrator Joshua Scism allegedly was deliberately indifferent to Mr. Rowe's right-hand deformity. Mr. Scism seeks resolution of this action through summary judgment. For the reasons explained below, the defendant's unopposed motion for summary judgment is **granted.**

**I. Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce

admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 573-74 (7th Cir. 2017).

Mr. Rowe did not file a response to the pending motion for summary judgment. *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."). By not responding to the motion for summary judgment, Mr. Rowe conceded to the defendant's version of the facts. *Brasic v. Heinemann's Inc.,* 121 F.3d 281, 286 (7th Cir. 1997). This is the result of Local Rule 56-1, of which Mr. Rowe was notified. See dkt. 34. This does not alter the standard for assessing a Rule 56 motion but does "[r]educ[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997).

## II. Undisputed Facts

### A. Mr. Rowe's Finger Injury and Treatment

Mr. Rowe "punched a wall" at the Correctional Industrial Facility and fractured his right fifth metacarpal bone. Dkt. 33-4 at 1 (medical records). He was seen and assessed by Dr. Naveed N. Nosrati on March 14, 2018. Dr. Nosrati recommended surgical repair of the fractured bone. *Id.* at 3.

On March 29, 2018, Dr. Joshua M. Adkinson surgically repaired Mr. Rowe's pinky finger fracture. *Id.*, at 12-13. K-wires were used to reduce the fracture and hold "the fragments in near anatomic reduction." *Id.* at 13. Mr. Rowe was placed in a "well-padded short-arm ulnar gutter splint with the hand in functional position." *Id.*

Mr. Rowe was seen for a follow-up visit with Dr. Stephen P. Duquette on April 11, 2018. *Id.* at 16. During this visit, Dr. Duquette noted: "We discussed that the K-wires would have to continue to be in place. We have placed him in an ulnar gutter case at this time. This will stay in place for another few weeks." *Id.*

Mr. Rowe was seen for another follow-up visit with Dr. Adkinson on April 25, 2018. *Id.* at 18. During this visit, Dr. Adkinson reported that Mr. Rowe's cast was removed and that he denied he was in pain. On examination, Mr. Rowe's finger alignment was normal. *Id.* An x-ray exam showed "2 K wires remain in place across the little finger metacarpal neck fracture. Alignment remains near-anatomic. Fracture lines are less distinct than previously." *Id.* Mr. Rowe was provided an ulnar gutter splint, and Dr. Adkinson advised Mr. Rowe to begin active range of motion. *Id.*

Mr. Rowe was seen by Nurse Practitioner Carley E. Chwialkowski on May 18, 2018, for a follow-up appointment. *Id.* at 22. Mr. Rowe presented to the appointment "wearing an ulnar

splint." *Id.* The K wires were removed during this visit. *Id.* "Order was sent back to prison with patient for aggressive physical therapy to increase full [range of motion]. Patient was advised the splint is no longer necessary." *Id.* at 23.

Mr. Rowe had three physical therapy sessions with Dana Miller. Dkt. 33-5 (Physical Therapy Records). On May 18, 2018, Ms. Miller noted that Mr. Rowe had "only about 30 degrees of flexion of the MP joint. He was educated on a few [range of motion] exercises and issued a written copy." *Id.* at 1. Mr. Rowe was next seen by Ms. Miller on May 31, 2018. *Id.* at 3. Mr. Rowe reported doing his home exercise plan two-to-three times per day, and also reported going to recreation to work on "gripping the bars to lift some light weights." *Id.* During this physical therapy session, Ms. Miller noted that Mr. Rowe's metacarpal joint range of motion had improved to "0-62 degrees." *Id.* "He was encouraged to continue his [home exercise plan] several times per day." *Id.* Mr. Rowe was seen for his third and final physical therapy session on June 12, 2018. *Id.* at 5. Again, Mr. Rowe reported completing his home exercise plan two-to-three times per day and going to recreation to lift some light weights. *Id.* at 5. Ms. Miller reported that Mr. Rowe's range of motion continued to improve, that Mr. Rowe can continue exercises on his own, and that further physical therapy was not indicated. *Id.*

### B. Post-Surgical Complaint

Mr. Joshua Scism was the Health Services Administrator ("HSA") at CIF from January 1, 2018 to February 2019. Dkt. 33-1 at ¶ 1 (Affidavit of Scism). As an HSA, Mr. Scism responded to formal grievances submitted by offenders which concerned their medical care. *Id.* at ¶ 3. The role of HSA was administrative as opposed to clinical; Mr. Scism managed the staffing of medical personnel at the facility and responded to formal grievances. *Id.* at ¶ 3.

Mr. Rowe had zero face-to-face encounters with Mr. Scism. Dkt. 33-6 at 5. Mr. Scism does not have a medical licensure and is incapable of clinically assessing patients or determining a given patient's course of treatment. *Id.* at ¶ 4. Mr. Scism cannot prescribe medication or direct action by licensed medical professionals. *Id.* Instead, Mr. Scism deferred to the treatment recommendations of licensed medical professionals. *Id.*

Mr. Scism responded to a single grievance submitted by Mr. Rowe concerning his hand. *Id.*, at ¶ 5; Dkt. 33-2 (Offender Grievance); Dkt. 33-3 (Grievance Response). Specifically, Mr. Scism received a grievance from Mr. Rowe dated January 3, 2019, relating to Mr. Rowe's complaints regarding his right hand. Dkt. 33-1 at ¶ 5. Mr. Rowe stated that right hand surgery had been performed at Eskenazi Hosptial in Indianapolis and that he wanted "Eskenazi held responsible for messing my hand up in a botched surgery. . . . I don't need physical therapy. I have a deformed hand that C.I.F. medical said would heal properly (post-surgery); but it didn't heal right." Dkt. 33-2. Mr. Rowe stated that he wants "C.I.F. medical staff to back me up against Eskenazi's medical surgery team … to be held responsible for the botched surgery." *Id.*

Mr. Scism responded to the formal grievance on January 11, 2019. *Id.* at ¶ 6; Dkt. 33-3 (Grievance Response). In preparing his response, Mr. Scism reviewed Mr. Rowe's recent medical records, including his paper records. Dkt. 33-1 at ¶6. Mr. Scism noted that neither Wexford nor the Indiana Department of Correction would pursue legal action on behalf of Mr. Rowe. However, medical staff would assist Mr. Rowe with physical therapy. If Mr. Rowe wanted to resume physical therapy, he was directed to file a healthcare request. Dkt. 33-3.

### III. Discussion

This action is brought pursuant to 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States

and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Mr. Rowe's allegations implicate his Eighth Amendment rights.

Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). However, "not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.'" *Eagan v. Dempsey*, 987 F.3d 667, 688 (7th Cir. 2021) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)). "'To determine if the Eighth Amendment has been violated in the prison medical context, we perform a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition.'" *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 751 (7th Cir. 2021) (quoting *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016) (en banc)).

As to the first element, a "medical condition is serious if it 'has been diagnosed by a physician as mandating treatment' or 'is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Perry v. Sims*, 990 F.3d 505, 511 (7th Cir. 2021) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). Mr. Scism argues that Mr. Rowe did not suffer from an objectively serious medical condition when he filed his grievance on January 3, 2019. He contends that Mr. Rowe undoubtedly had an objectively serious medical condition in March 2018—and likely maintained such condition through early June 2018. However, after Mr. Rowe was discharged from physical therapy with no additional recommendations for medical intervention, he no longer fit the criteria for an objectively serious medical condition.

The Court agrees. Mr. Rowe's medical records do not indicate that Mr. Rowe had a serious medical need that persisted in January of 2019, and the grievance he submitted does not identify an ongoing concern requiring a doctor's attention. Accordingly, Mr. Rowe's Eighth Amendment claim fails because he has not presented evidence that he suffered a serious medical need in January 2019.

"The second element of deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk." *Donald v. Wexford Health Sources, Inc*., 982 F.3d 451, 458 (7th Cir. 2020) (internal quotations and citations omitted). A defendant must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* (quoting *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008)). *See also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Therefore, to survive summary judgment Mr. Rowe must have evidence of acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. Mr. Rowe has not met his burden. Instead, the undisputed record reflects that Mr. Rowe sought legal intervention in a grievance. Mr. Scism responded to that grievance after reviewing Mr. Rowe's medical records and advised him to submit a healthcare request form if he desired to receive physical therapy or further assessment for medical treatment. Mr. Scism's response to the grievance was reasonable and there is no evidence that Mr. Rowe was injured as a result of his response.

## IV. Conclusion

Mr. Rowe has not identified a genuine issue of material fact as to his claims in this case, and the defendant is entitled to judgment as a matter of law. Accordingly, the defendants' motion for summary judgment, dkt [31], is **granted.** Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date:     5/19/2021

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

LESTER ROWE
1102 N Winfield Ave
Indianapolis, IN 46222

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Erika Lauren Steuerwald
KATZ KORIN CUNNINGHAM, P.C.
esteuerwald@kkclegal.com